Anton N. Handal (Bar No. 113812)
tony.handal@gmlaw.com
Gabriel G. Hedrick (Bar No. 220649)
gabriel.hedrick@gmlaw.com
Lauren G. Kane (Bar No. 286212)
lauren.kane@gmlaw.com
GREENSPOON MARDER LLP
401 West A Street, Suite 1150
San Diego, California 92101
Tel: 619.544.6400
Fax: 619.696.0323

Attorneys for Plaintiff
SUSHAMA GOKHALE

SEYFARTH SHAW LLP
Laura Maechtlen (SBN 224923)
E-mail: lmaechtlen@seyfarth.com
Chantelle C. Egan (SBN 257938)
E-mail: cegan@seyfarth.com
Pritee K. Thakarsey (SBN 266168)
E-mail: pthakarsey@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Dana L. Peterson (SBN 178499)
E-mail: dpeterson@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
DOLBY LABORATORIES, INC.;
JEFFREY FEHERVARI and CONROY
SHUM

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SUSHAMA GOKHALE, an individual;<br><br>Plaintiff,<br><br>v.<br><br>DOLBY LABORATORIES, INC., a California corporation; JEFFREY FEHERVARI, an individual; CONROY SHUM, an individual; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.: 3:17-cv-03845-JST<br><br>**STIPULATED ORDER FOR THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to

-1-

cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. LIAISON

The parties shall identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a. Only ESI created or received between January 1, 2011 and December 31, 2017 will be preserved;

b. The Parties agree to limit the number of custodians for preservation purposes to those identified in **Exhibit A**. The parties further agree that there will be no obligation to search and collect from each and every custodian identified for preservation. The parties shall add or remove custodians as reasonably necessary and will meet and confer regarding the same;

c. Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

   1. Deleted, shadowed, fragmented, residual, or cached data, temporary files, random access memory ("RAM"), or ESI that would only be accessible by taking a forensic (bit stream) image of a device.

   2. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

   3. Voicemails or instant messages.

4. Server, system, or network logs.

5. Information stored on cellular telephones, including but not limited to text messages, voicemails, and telephone call history.

6. Corrupted data or data containing viruses.

7. Back up tapes or other storage media used for disaster recovery purposes.

d. Additional data sources that are not reasonably accessible may be identified as a result of investigation. The parties will meet and confer regarding any disagreement about the accessibility of such additional data sources. Nothing herein shall prevent a party from subsequently requesting that ESI identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval. Further, nothing herein shall prevent a party from requesting and receiving additional detail and explanation from the producing party regarding any of the above items that would allow the requesting party to further evaluate the substance of the information and the burden and costs of retrieving and providing this information.

## 5. SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The parties further agree to meet and confer to identify the proper custodians, proper search terms and proper timeframe for email production requests as set forth in this District's E-Discovery Guidelines. Nothing herein shall limit a party's right to use technology assisted review tools to reasonably assist its review and production.

## 6. PRODUCTION FORMATS

The parties agree to produce documents in the formats described below. The parties agree not to degrade the searchability of documents as part of the document production process.

a. **Images**. The parties will produce images in Group IV Single Page Tiff format,

scanned at 300 DPI, with Bates numbers stamped on the bottom right. Confidentiality designations will be stamped on the bottom left. Both stamps to be situated so as to not block or obliterate underlying text. Files shall be named by BegBates. All hidden text (*e.g.*, track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.

b. **Native Files**. The parties will produce spreadsheets (*e.g.*, Excel, CSV, and other delimited text files) and multimedia files in native format where reasonably available, with the exception of native files that correspond to produced documents that have been redacted. Where documents are produced in native format, the Parties shall rename the file to the BegBates Number and include any confidentiality designation therein as well. The Parties shall provide placeholder images with Bates and confidentiality branding for each natively produced document.

c. **Parent-Child Relationships**. Parent-child relationships (*e.g.*, the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email, and families will be associated using attachment range metadata as specified in **Exhibit B**.

d. **Bates Numbering**. All documents produced in image format will include a legible, unique page identifier ("Bates Number") electronically embossed onto each page at a location that is reasonably intended to not obliterate, conceal, or interfere with any information in the document. No other legend or stamp will be placed on the images other than a confidentiality legend (where applicable), redactions (consistent with any other protective orders or applicable law), and if desired by a party, a document control number separate from the Bates Number. With respect to the identification of files produced in their native format, the parties shall identify each file produced using the BegBates Number as the name, and link in the applicable load file.

e. **File Naming Conventions**. Each TIFF Image shall be named with the unique Bates

Number of the page of document. Each corresponding text file shall also be named with the BegBates Number of the document. In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

f. **Load Files.** The parties shall produce a Concordance load file with each production. Each load file shall include the metadata fields provided in **Exhibit B** to the extent that they are available as a part of standard processing. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

g. **Extracted Text/OCRed Text**. The parties shall produce extracted text in ASCII format, or OCR files reflecting the full text that has been electronically extracted from each produced document, whether its original from is hard copy or electronic. The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software.

h. **Privileged Information**. Any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work-product, or any other claim of privilege or immunity from discovery shall be identified by the producing party in a privilege log, which the producing party shall produce in an electronic format that allows text searching and organization of data. An e-mail thread contained within a single document need only be recorded once on the producing party's privilege log, even if a privilege is asserted over multiple portions of the thread. Privilege log identification is not required for communications exchanged between the producing party and their litigation counsel or among counsel for the producing party after the date of filing of this action.

i. **Privilege Log**. For each responsive document for which a producing party asserts

*STIPULATED ORDER FOR THE DISCOVERY OF ESI*     Case No. 3:17-cv-03845-JST

that a privilege applies, the producing party must include in the privilege log the information required by Federal Rule of Civil Procedure 26(b)(5).  Notwithstanding a claim of privilege, any purportedly privileged document containing non-privileged matter must be: (i) produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself, and (ii) listed on the privilege log to be provided above.  A privilege log shall be provided by the producing party to the receiving party within 45 days following the delivery of any applicable production, unless there is good cause for delay.

j. **Production of Privileged Materials ("Claw-back").**  In the event that a producing party claims that it failed to designate or withhold any production materials or other information as privileged or work-product materials, it shall promptly notify, in writing, all parties to whom such privileged material was produced or disclosed of the producing party's intent to assert a claim of privilege or work-product over such materials ("Privileged Material").  Upon such notice, the receiving party shall not review or use the disclosed Privileged Material in any respect, except to the minimal extent necessary to confirm the appropriateness of the designation or to otherwise challenge the designation pursuant to the procedures set forth below.  The receiving party shall within 14 days return, sequester, and delete or destroy all copies of the disclosed Privileged Material (including any and all work-product containing such Privileged Material); and shall take reasonable steps to retrieve such Privileged Material if the receiving party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material).  In the event the receiving party challenges the designation pursuant to the procedures set forth below, the receiving party's obligation to sequester remains, except to the minimal extent necessary to challenge the designation, if so elected, pursuant to the procedures set forth below.

The receiving party may object to the Producing Party's designation of disclosed information as Privileged Material by providing written notice of such objection within 14 days of its receipt of a written demand for the return of the

-6-

disclosed Privileged Material. Any such objection shall be resolved as described in the model protective order.~~by the Court in an in camera review.~~ The receiving party agrees not to argue in connection with a dispute over Privileged Material that the information may not have been reviewed by the producing party prior to its disclosure or that the producing party did not take reasonable steps to prevent disclosure.

Pending resolution of any such dispute ~~by the Court~~, the receiving party shall sequester and shall not use the disclosed Privileged Material in any respect except as required by the model protective order ~~necessary to submit to the Court for in camera review~~. Where the parties agree, or the Court orders, that a document is protected by the attorney-client, work-product, or other privilege, and such document was originally produced in electronic format on media containing production materials that are not subject to any exemption from production, the producing party shall promptly provide replacement production to the receiving party.

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. The production by any producing party, whether in this action or in any other proceedings, of materials subject to a claim of privilege or work-product shall not result in a waiver of any such protection in this action for the produced materials or for any other privileged or immune materials containing the same or similar subject matter. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. Nor shall the fact of production by any producing party in this action be used as a basis for arguing that a claim of privilege or work-product has been waived in any other proceeding.

**k. Receipt of Privileged Information**. Nothing in this Order shall relieve counsel for

any receiving party of any existing duty or obligation, whether established by case law, rule of court, regulation or other source, to return, and not to review, any privileged or work-product materials without being requested by the producing party to do so. Rather, in the event a receiving party becomes aware that it is in possession of what appears to be a privileged document, then counsel for the receiving party shall immediately: (i) cease any further review of that document; (ii) promptly sequester the potentially privileged material; and (iii) notify the producing party of the production, requesting whether the producing party intended for the document to be produced. In the event the producing party confirms the production of the privileged document, the receiving party shall promptly return or destroy all copies of the produced privileged document in its possession and take reasonable steps to retrieve all copies of the produced privileged documents distributed to other counsel or non-parties.

**l. Redactions.** Redacted files should be produced as PDFs or TIFFs in redacted form, with applicable text files, or PDF text layers, containing extracted or OCRed text acquired after redaction. A party may employ native redaction techniques so long as the method of redaction employed does not significantly impair the usability or searchability of the non-redacted portions of the redacted item and the fact of alteration is disclosed. To the extent redactions are made on the basis of privilege, such redactions must be logged in the manner of any other responsive material withheld on claims of privilege. For the avoidance of doubt, redactions made on the basis of privacy (such as, e.g., social security or taxpayer-identification numbers, names of minor children, financial account numbers, etc.) and/or confidentiality need not be logged.

## 7. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from the following sources and custodians: the emails of Xaviera Aviles, Abby Evans, Jeff Fehervari, Sushama

Gokhale, Dan Young, and Conroy Shum. Following the initial production, the parties will continue to prioritize the order of subsequent productions, if any.

**8. NO WAIVER**

Nothing contained herein is intended to or shall serve to limit a party's right to review and withhold documents, ESI, or information (including metadata) as permitted by the Federal Rules of Civil Procedure and applicable case law.

**9. RELIEF FROM COURT**

If the parties are unable to agree, need further clarification on any issue relating to the preservation, collection, or production of electronically stored information, or require modification of this Order, any party may seek appropriate relief from the Court as described in the model protective order.

**10. PROTECTIVE ORDER**

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of any otherwise applicable Protective Order.

**11. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 6, 2018  **GREENSPOON MARDER LLP**

By: */s/ Gabriel G. Hedrick*
Gabriel G. Hedrick
Attorneys for Plaintiff
SUSHAMA GOKHALE

Dated: July 6, 2018  **SEYFARTH SHAW LLP**

By: */s/ Chantelle C. Egan*
Chantelle C. Egan
Attorneys for Defendants
DOLBY LABORATORIES, INC.; JEFFREY FEHERVARI and CONROY SHUM

-9-

*STIPULATED ORDER FOR THE DISCOVERY OF ESI*  Case No. 3:17-cv-03845-JST

## **ATTESTATION OF E-FILED SIGNATURE**

Pursuant to Civil Local Rule 5-1(i)(3) and Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I, Chantelle C. Egan, attest that above signatory, Gabriel G. Hedrick, has read and approved the foregoing and consent to its filing in this action.

                                                  /s/ *Chantelle C. Egan*
                                                  Chantelle C. Egan

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: July 9, 2018

Hon. Jon S. Tigar
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## Custodian List for Preservation

I. PLAINTIFF

    1. Sushama Gokhale

II. DEFENDANT

1. Abby Evans
2. Allison Jacobs
3. Ally Li
4. Amy Kim
5. Amy Skryja
6. Andrew Dahlkemper
7. Andy Sherman
8. Aysel Akdeniz
9. Bonnie Adell
10. Brian Satterley
11. Carole Vandermeyde
12. Cole Rathje
13. Conroy Shum
14. Curtis Hodge
15. Dan Young
16. Ed Swift
17. Elaine Dull
18. Elizabeth Miller
19. Emilio Daireaux
20. Faith Ng
21. Harry Cole
22. Heath Hoglund
23. Jason Dea
24. Jeff Fehervari
25. Kiersten Bautista
26. Leo Spooner
27. Linda Rogers
28. Marshall Feldman
29. Mary Wand
30. Mike Goldsmith
31. Mike Okada
32. Moonbong Jang
33. Penelope Cruz
34. Rachel Goodman
35. Randy Dela Cruz
36. Sabina Polnar
37. Scott A. Sullivan

*STIPULATED ORDER FOR THE DISCOVERY OF ESI*      Case No. 3:17-cv-03845-JST

38. Stephanie Hirasawa
39. Subroto Bose
40. Sushama Gokhale
41. Tony Fox
42. Vivian Vassallo
43. Winona Ou
44. Xaviera Aviles

# EXHIBIT B

# Metadata Fields for Production

Note: Metadata Field names may vary depending on the application which generates them. For example, Microsoft Outlook creates different Metadata Field names than does Lotus Notes. Accordingly, the chart below describes the Metadata Fields to be produced in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing.

| Field Name | Description | Email | Loose Files/ Att. |
|---|---|---|---|
| StartBates | The Bates number for the first page of the document. | ☒ | ☒ |
| EndBates | The Bates number for the last page of the document. | ☒ | ☒ |
| Start Attachment | The first Bates number of the first attachment to an email. | ☒ | ☐ |
| End Attachment | The ending Bates number of the last page of the last attachment to an Email. | ☒ | ☐ |
| ParentBates | First bates number of the parent document for each attachment record. | ☐ | ☒ |
| From | The reported sender of an Email message. | ☒ | ☐ |
| To | The reported recipient(s) of an Email message contained in the "To" field. | ☒ | ☐ |
| CC | The reported recipient(s) of an Email message contained in the "CC" field. | ☒ | ☐ |
| BCC | The reported recipient(s) of an Email message contained in the "BCC" field. | ☒ | ☐ |

*STIPULATED ORDER FOR THE DISCOVERY OF ESI*      Case No. 3:17-cv-03845-JST

| Field Name | Description | Email | Loose Files/ Att. |
|---|---|---|---|
| SentDate | The date on which an Email was sent by the user's Email software (if available) in Pacific time. | ☒ | ☐ |
| SentTime | The time at which an Email was sent by the user's Email software (if not included in SentDate) in Pacific time. | ☒ | ☐ |
| EmailSubject | The Subject Line of an Email. | ☒ | ☐ |
| AttachmentCount | The number of attachments to an Email | ☒ | ☐ |
| FileName | The file name. | ☒ | ☒ |
| FileExt | The file extension. | ☒ | ☒ |
| Author | The author of the file as extracted from the file metadata. | ☐ | ☒ |
| CreatedDate | The date the file was created as extracted from the file metadata. | ☐ | ☒ |
| CreatedTime | The time the file was created as extracted from the file metadata. | ☐ | ☒ |
| LastModDate | The date on which the file was last modified as extracted from the file metadata. | ☐ | ☒ |
| LastModTime | The time at which the file was last modified as extracted from the file metadata. | ☐ | ☒ |
| MD5Hash | The MD-5 hash value of the file. | ☒ | ☒ |
| Custodian | All custodian(s) or source(s) associated with the record. | ☒ | ☒ |
| TEXTPATH | The path to the extracted text for the file (if needed). | ☒ | ☒ |

| Field Name | Description | Email | Loose Files/ Att. |
|---|---|---|---|
| NATIVE PATH | The path to the native document on the production media (where native file is produced). | ☒ | ☒ |

47558506v.1